IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HALO WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:12-0302 |
| | ) | JUDGE CAMPBELL/KNOWLES |
| The TENNESSEE REGULATORY AUTHORITY; KENNETH C. HILL, in his official capacity as Chairman of the Tennessee Regulatory Authority; MARY W. FREEMAN, in her official capacity as Director of the Tennessee Regulatory Authority; SARA KYLE, in her official capacity as Director of the Tennessee Regulatory Authority, BELLSOUTH TELECOMMUNICATIONS, LLC d/b/a AT&T TENNESSEE, | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court upon a "Motion to Intervene" filed by nine rural local exchange carriers ("RLECs"). Docket No. 42. The RLECs have submitted a supporting Memorandum. Docket No. 42-1. In their Motion, the RLECs state that the current Defendants (the Tennessee Regulatory Authority and BellSouth Telecommunications, LLC) consent to the instant Motion. Docket No. 42, p. 2. Plaintiff, Halo Wireless, Inc., has filed a Response in Opposition to the Motion. Docket No. 48. With leave of Court (Docket Nos. 49, 50) the RLECs have submitted a Reply Memorandum. Docket No. 51. Judge Campbell has referred the Motion to the undersigned "for decision in connection with the Initial Case Management Conference."

Docket No. 53.

This is an action filed by Halo seeking judicial review of an Order of the Tennessee Regulatory Authority (TRA).[1] The Court has jurisdiction pursuant to 47 U.S.C. § 252(e)(6), and possibly pursuant to 28 U.S.C. § 1331and 42 U.S.C. § 1983. The proceeding before the TRA was one in which BellSouth Telecommunications, LLC d/b/a AT&T Tennessee ("ATT") sued Halo Wireless, Inc., essentially for breach of contract. The contract is known as an interconnection agreement or ICA. While certain portions of the TRA's Order are rather technical, the Court need not delve into the Order in great detail for purposes of the instant Motion.

In its Order, the TRA summarized ATT's Complaint in relevant part as follows:

> In its Complaint, AT&T seeks to terminate its wireless ICA with Halo because Halo has violated the ICA by sending AT&T large volumes of traffic that does not originate on a wireless network. AT&T further asked the TRA to order Halo to pay it the amounts that it owes AT&T.
>
> . . .
>
> AT&T charges that Halo sends AT&T traffic that is wireline-originated, interstate, interLATA or intraLATA toll traffic and that Halo disguises it as local traffic to avoid access charges that apply to such traffic. AT&T asks the TRA to order Halo to terminate the Parties' ICA for this breach or, in the alternative, to order Halo to cease and desist from sending wireline-originated traffic not authorized by the ICA to AT&T.
>
> . . .
>
> AT&T alleges that Halo consistently alters the Charge Number ("CN"), which prevents AT&T from properly billing Halo based on where the traffic originated.

---

[1] The Order at issue has been filed herein as Docket No. 1-1.

> . . .
>
> The wireline-originated traffic that Halo previously sent to AT&T is not governed by the Parties' ICA but is instead subject to tariffed switched access charges.
>
> . . .
>
> AT&T asks the TRA to order Halo to pay it for transport facilities that AT&T has provided but for which Halo has refused to pay.

Docket No. 1-1, p. 7-8 (footnotes omitted).

ATT also argued that 74% of the traffic Halo sent to ATT was land line-originated traffic. *Id.*

The TRA interpreted the language of the ICA to require Halo to deliver only traffic that had originated through wireless transmitting and receiving facilities. Docket No. 1-1, p. 15. The TRA stated, "Thus, evidence that Halo has delivered wireline-originated traffic will result in a finding that Halo has breached the ICA." *Id.* The TRA determined that Halo had delivered such traffic and thus found that Halo had materially breached the ICA. *Id.*, p. 17. The TRA also upheld ATT's other arguments. The TRA authorized ATT to terminate its ICA with Halo, and to stop accepting telephone traffic from Halo. *Id.*, p. 22. The Order also determined that ATT could pursue further action for the collection of damages in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, or other appropriate fora as permitted by that Court.

In the instant action, Halo seeks to overturn the TRA's Order on a number of grounds, including: (1) the TRA did not have jurisdiction; (2) the TRA erroneously considered the testimony of two ATT witnesses; (3) the TRA discounted prior rulings; and (4) the traffic sent to

ATT in Tennessee did, in fact, originate from end-user wireless equipment.

Halo's Complaint was filed in this Court on March 26, 2012, naming as Defendants the TRA and its members. Docket No. 1. The parties later agreed that ATT should be allowed to intervene as an additional Defendant, and it was allowed to do so. Docket Nos. 12, 20. The instant Motion to Intervene was filed April 16, 2012. Docket No. 42. The RLECs provide the following facts in the instant Motion:

> The proposed intervenors are nine RLECs (rural local exchange carriers) operating in the state of Tennessee pursuant to authority granted by the Tennessee Regulatory Authority ("TRA"). The RLECs provide wireline "local" telephone service and "access" telephone service.
>
> Local service typically means telephone service that originates and terminates within a local exchange area. Toll calls are those that originate or terminate outside of that local calling area. Regardless of the source of the call or telecommunications "traffic," the receiving RLEC is obligated to send the call across its network [to] the intended recipient, a service referred to as "terminating the traffic."
>
> When a receiving RLEC terminates a toll call to its customers, the receiving RLEC is entitled to compensation or "access" payments from the carrier that delivers it for termination. If the call originates and terminates outside of Tennessee, the receiving RLEC collects interstate access charges. Interstate access charges apply to calls that originate and terminate in different local calling areas within Tennessee. The FCC oversees interstate access charge rates, and the states – through public service commissions such as the TRA – oversee intrastate access charge rates. The regulated RLECs' tariffs (or "price lists"), which are on file with the TRA, identify the rates applicable to the RLEC'[s] local exchange services and intrastate access services.
>
> As alleged in the Complaint in the instant matter, Halo executed an interconnection agreement (or "ICA") with AT&T that "facilitates the exchange of traffic with AT&T and all other carriers that are also interconnected with AT&T." Compl. ¶ 14. *When Halo*

> *obtained access to AT&T's network through the interconnection agreement, it also indirectly obtained access to the RLECs' networks, even though the RLECs do not have interconnection agreements directly with Halo . . .*
>
> . . .
>
> *The underlying issues raised by AT&T in its TRA Complaint are virtually identical to the issues raised by the RLECs in a similar Complaint the RLECs filed with the TRA on July 7, 2011.* In particular, the RLECs alleged, just as AT&T did, that Halo should pay "terminating access charges" to the RLECs for terminating interstate and intrastate long distance calls. In fact, however, Halo has not made any payments to RLECs for the use of the RLEC networks.
>
> . . .
>
> As of January 9, 2012, the RLECs were owed over $1 million in access charges by Halo. . . . Until the TRA's Order allowing AT&T to stop accepting traffic from Halo, the RLECs were losing over $100,000 per month in unpaid access charges. . . . Because of the TRA's decision, AT&T has stopped handling Halo's calls and the RLEC losses have stopped.

Docket No. 42-1, p. 2-4 (emphasis added, citations and footnotes omitted).

In the instant Motion, the RLECs argue that they are entitled to intervene under both provisions of Fed. R. Civ. P. 24, which state in relevant part as follows:

> Intervention.
>
> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
>> (1) is given an unconditional right to intervene by the federal statute; or
>>
>> (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties

5

>>adequately represent that interest.

>(b) Permissive Intervention.

>>(1) In General. On timely motion, the court may permit anyone to intervene who:

>>>(A) is given a conditional right to intervene by a federal statute; or

>>>(B) has a claim or defense that shares with the main action a common question of law or fact.

As the RLECs correctly argue, the Sixth Circuit has held that a third party has a right to intervene in an action where it can show:

>(1) timeliness of application;

>(2) a substantial legal interest in the case;

>(3) impairment of the applicant's ability to protect that interest in the absence of intervention; and

>(4) inadequate representation of that interest by parties already before the court.

Docket No. 42-1, p. 4, citing *Northeast Ohio Coal. for Homeless & Serve. Emp. Int'l Union, Local 1199 v. Blackwell,* 467 F.3d 999, 1007 (6th Cir. 2006).

The Court takes judicial notice of an important event that occurred after the filing of the instant Motion to Intervene. As the RLECs state in their Motion, they had previously filed their own Complaint against Halo (and another entity known as Transcon, Inc.), before the TRA. *See In Re: Complaint of Concord Telephone Exchange, Inc., et al*, Docket No. 11-00108, Tennessee Regulatory Authority. On April 18, 2012, two days after the instant Motion to Intervene was

filed, the TRA entered an Order in the RLECs proceeding.[2] That Order followed essentially the same key reasoning as the TRA had set forth in the Order that is the subject of the instant action. That Order determined that Halo was liable to the RLECs for access charges on the intrastate interLATA and intraLATA land line traffic that it had sent to them (through ATT). Docket No. 47-2, p. 21. The Order also provided that the RLECs could pursue further action for the collection of access charges in United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, or other appropriate fora as permitted by that Court.

Halo's Response in Opposition to the instant Motion was filed after the TRA entered its Order in the RLECs' proceeding. Halo argues:

> [T]he RLECs have failed to meet their burden of proving that their interests will be impaired absent intervention. In the RLECs TRA Order, the RLECs interests have been vindicated. With this vindication, the RLECs can no longer claim that "denying the RLECs' Motion to Intervene would impair and impede the RLECs from protecting their interests in this case." . . . Notwithstanding the outcome of this appeal, the RLECs TRA Order will stand (unless it is overturned in an appeal – which would be a case in which the RLECs would have standing and would undoubtedly be allowed to intervene). The RLECs have not proven, and with the entry of the RLECs TRA Order, the RLECs cannot prove, that their interests will be impaired absent intervention.

Docket No. 48, p. 4.

Additionally, Halo argues that ATT will adequately represent the RLECs interests in this appeal. Halo argues, "the RLECs have not stated one argument that they would make, but AT&T would not." *Id.*, p. 5.

The RLECs submitted a Reply Memorandum to Halo's Response. Docket No. 51. That

---

[2] The TRA's Order in the RLECs case has been filed herein as Docket No. 47-2.

7

Reply, however, conspicuously fails to adequately and directly address these arguments that Halo raised in its Response. In their Reply, the RLECs argue that they do not have a direct ICA with Halo but that, "in this case, the RLECs will be directly bound by the outcome of this litigation, because if the AT&T-Halo interconnection is reestablished by this Court, Halo will *immediately* again begin using the AT&T network to deliver traffic to the RLECs without compensating for such use." Docket No. 51, p. 3 (emphasis in original).

It appears to the Court that the key issue for both ATT and the RLECs is whether Halo delivered wireline-originated traffic to ATT. The Court expects that ATT will strongly argue that it did. Additionally, assuming that Halo appeals the TRA's Order in the RLECs' case, the RLECs will strongly argue that it did. If the RLECs will indeed "be directly bound by the outcome of this litigation," that circumstance will result from the relationships of the parties, particularly the fact that the RLECs apparently must accept any traffic that Halo appropriately sends to ATT; it will not result from the fact that the RLECs have not had an adequate opportunity to present their arguments.

With regard to intervention as of right, the Court agrees with Halo that the RLECs have not shown either of the final two requirements of *Blackwell*. The fact that the RLECs won their claims in their own TRA proceeding is a significant factor. The Court believes there are two likely outcomes to the TRA's Order in the RLEC proceeding. Either the Order will not be appealed, in which case the RLECs will have won, or the Order will be appealed by Halo, presumably in a proceeding similar to the one in the case at bar, in which the RLECs will almost certainly be allowed to intervene to assert their arguments.

If the RLECs cannot intervene as a matter of right, the question becomes whether they

8

should be allowed to permissively intervene. The Court has no doubt that the RLECs have a claim or defense that shares with the main action a common question of law or fact. Rule 24(b)(3) provides that, in situations involving permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Despite Halo's arguments to the contrary, the Court sees no undue delay or prejudice that would result from intervention, especially at this early stage of the action.

This conclusion, however, does not end the issue. Permissive intervention is just that – it is permissive. While the Court may allow intervention, it does not have to allow intervention. The decision whether to allow a third party to intervene permissively is a matter within the Court's discretion. *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d. 323, 343-46 (6th Cir. 2007).

In the case at bar, Halo is essentially appealing an Order of a state administrative agency. It makes sense that the agency itself and the party opposing Halo before the agency (ATT) should be parties to the instant action. As discussed above, however, there is absolutely no need for the RLECs to participate in this case. They surely will be allowed to intervene in any appeal that might be filed in their own TRA proceeding. The Court sees no need to complicate the instant case with the addition of nine more Defendants.

The RLECs have a clear alternative route to protecting their rights, which counsels the Court to deny permissive intervention. In *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1124 (6th Cir. 1989), the Sixth Circuit upheld the denial of a Motion to Intervene in a tenant's action against a public housing authority. The Court noted that a "charge of abuse of discretion in the denial of a Motion for Permissive Intervention appears to be almost untenable on its face when

an appellant has other adequate means of asserting her rights." *Id.*

Moreover, because the instant action is a review by the Court of a state administrative agency's decision, it seems likely that there will be no discovery. That fact leaves little for the RLECs to do in the instant action, except to file briefs. If they wish to file briefs, they may seek to file amicus curiae briefs.

For the foregoing reasons, the instant "Motion to Intervene" (Docket No. 42) is DENIED.

IT IS SO ORDERED.

E. Clifton Knowles
United States Magistrate Judge